UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JDH UNLIMITED INC.,

                                Plaintiff,

                      v.

APKZ MEDICAL INC., WESTERN MED SUPPLIES
LLC, CHEK SHIN SHEN a/k/a JESSE SHEN, and
JESSICA ROSE KOEHLER,

                              Defendants.
------------------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

21-CV-3118
(Kuntz, J.)
(Marutollo, M.J.)

**JOSEPH A. MARUTOLLO, United States Magistrate Judge:**

On June 2, 2021, Plaintiff JDH Unlimited Inc. filed this action against Defendants APKZ

Medical Inc. ("APKZ"), Western Med Supplies LLC ("Western"), Chek Shin Shen a/k/a Jesse

Shen ("Shen"), and Jessica Rose Koehler ("Koehler") (collectively, "Defendants"), asserting

causes of action for fraud, breach of contract, conversion, and unjust enrichment. *See generally*

Dkt. No. 1. On November 23, 2021, Plaintiff moved for default judgment against all Defendants.

*See* Dkt. No. 21 ("Plaintiff's Motion"). On February 1, 2022, the Court entered a default judgment

in the sum of $475,870.85 after Defendants failed to appear in this action or respond to the

Complaint. *See* Dkt. No. 24. On July 6, 2022, Koehler moved to vacate the default judgment

pursuant to Fed. R. Civ. P. 55(c) and 60(b), to dismiss the Complaint for lack of personal

jurisdiction, for a stay of execution of the judgment, and for the return of all funds executed upon

in connection with the judgment. *See* Dkt. No. 25 ("Koehler's Motion").

On July 13, 2022, the Court denied Koehler's Motion. *See* July 13, 2022 Dkt. Order. On

August 9, 2022, Koehler appealed to the United States Court of Appeals for the Second Circuit.

*See* Dkt. No. 32. On September 27, 2023, the Second Circuit vacated the Court's July 13, 2022

judgment and remanded this action for further proceedings consistent with the Second Circuit's Order.  *See* Dkt. No. 33.

On October 5, 2023, the Honorable William F. Kuntz, II, United States District Judge, referred Plaintiff's Motion to then-United States Magistrate Judge Ramón E. Reyes, Jr.  Dkt. No. 36.  Upon Judge Reyes's appointment as a United States District Judge, this case, and thus the referral, was re-assigned to the undersigned.  *See* November 9, 2023 Text Order.  On March 2, 2024, the undersigned issued a Report and Recommendation that Koehler's Motion be granted and the default judgment against her be vacated, and Plaintiff's Motion be denied.  *See* Dkt. No. 40 (the "March 2, 2024 Report and Recommendation").  Both Plaintiff and Koehler timely filed objections to the Report and Recommendation.  *See* Dkt. Nos. 42, 43.

On May 16, 2025, Judge Kuntz directed the undersigned "to issue an amended Report and Recommendation only as to Defendant Koehler's motion at [Dkt.] No. 25[.]" Dkt. No. 45.  Judge Kuntz directed the undersigned to address (1) whether the recommendation to vacate default judgment applies to all Defendants or is limited to Defendant Koehler; and (2) if the Court vacates default judgment as to all Defendants, whether it is proper to dismiss the case or to transfer venue to the United States District Court for the District of Nevada.  *Id.*

For the reasons set forth below, the undersigned respectfully recommends that default judgment be vacated as to only Defendant Koehler; and that this action be transferred to the U.S. District Court for the District of Nevada.[1]

---

[1]  This Report and Recommendation amends and supersedes the March 2, 2024 Report and Recommendation, as set forth herein.  Additionally, the undersigned notes that, because a motion to transfer venue is non-dispositive, the undersigned can adjudicate it by order pursuant to 28 U.S.C. § 636(b)(1)(A), rather than by issuing a report and recommendation. *See, e.g., Mulgrew v. United States Dep't of Transportation*, 717 F. Supp. 3d 281, 284 n.1 (E.D.N.Y. 2024) (collecting cases).  But given the unique procedural posture and the Court's May 16, 2025 order, the undersigned issues a Report and Recommendation regarding the transfer of venue here.

I.    **Background**

A.    **Factual allegations**

Unless otherwise indicated, the following facts are taken from Plaintiff's Complaint, the various declarations submitted by the parties on the issue of the Court's personal jurisdiction over Defendant Koehler, and the parties' objections to the Report and Recommendation. *See Domond v. Great Am. Recreation, Inc.*, 116 F. Supp. 2d 368, 370 (E.D.N.Y. 2000) ("Because the Defendants' motion to dismiss is based upon an alleged lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the Court will also consider the various affidavits submitted by the parties on that issue." (citing *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 196-98 (2d Cir. 1990)).

Plaintiff is a New York corporation with a principal place of business in Brooklyn. *See* Dkt. No. 1 ¶ 1. In January 2021, Plaintiff and a non-party purchaser entered into an agreement wherein Plaintiff agreed to supply the purchaser with nitrile gloves in increments of three million. *Id.* ¶ 10. To fulfill the first order, Plaintiff entered into a separate contract with APKZ, a Florida corporation with a principal place of business in Doral, Florida. *Id.* ¶ 2. Pursuant to that contract, APKZ agreed to provide, and later did provide, Plaintiff with three million gloves. *Id.* ¶ 11.

In late January 2021, Plaintiff's purchaser requested that Plaintiff deliver a second batch of three million gloves. *Id.* ¶ 21. Plaintiff contacted APKZ to ask if it had an additional three million gloves that it could sell to Plaintiff. *Id.* ¶ 13. APKZ confirmed that it had the gloves in inventory, and based on this representation, Plaintiff entered into a second contract with APKZ for the purchase of three million gloves. *Id.* ¶¶ 14-15, 17. Koehler states in a sworn declaration that she was not a party to this agreement. Dkt. No. 39-1 ¶ 3.

3

On February 1, 2021 and February 2, 2021, respectively, Plaintiff wired APKZ the aggregate sum of $442,500.00 ("Plaintiff's Funds") for the purchase of the second batch of gloves. Dkt. No. 1 ¶ 16.  APKZ wired Plaintiff's Funds from its Chase bank account in New York to APKZ's bank account at City National Bank of Florida.  *Id.*

Unbeknownst to Plaintiff, APKZ did not have three million gloves in its inventory to sell to Plaintiff.  *Id.* ¶ 18.  Instead, APKZ tried to source the gloves from Western, a Nevada limited liability company with a principal place of business in Las Vegas, Nevada.  *Id.* ¶ 3.  In early February 2021, APKZ and Western entered into a contract pursuant to which Western agreed to sell APKZ three million nitrile gloves for the aggregate sum of $439,500.00.  *Id.* ¶ 20.  On February 1, 2021 and February 2, 2021, APKZ wired the aggregate sum of $439,500.00, which Plaintiff claims consisted of Plaintiff's Funds, from its account at City National Bank of Florida to Western's bank account at Chase Bank.  *Id.* ¶ 21.

In the first week of February 2021, a dispute arose between APKZ and Western, which ultimately resulted in Western refusing to provide APKZ with the gloves.  *Id.* ¶¶ 22-23.  This resulted in APKZ not being able to fulfill its contract with Plaintiff.  *Id.* ¶ 24.

In early February 2021, Plaintiff, APKZ, and Western met via Zoom to discuss the dispute.  *Id.* ¶ 25.  The parties agreed that the transaction between APKZ and Western would be canceled and that Plaintiff's Funds would be returned to Plaintiff.  *Id.* ¶ 25.  Koehler states in a sworn declaration that she was "never a part of any Zoom meeting between the parties."  Dkt. No. 39-1 ¶ 4.

Western subsequently failed to return the money to Plaintiff, prompting APKZ to submit a fraud report with City National.  Dkt. No. 1 ¶¶ 26-27.  City National forwarded the fraud report to Chase bank where Western's account was holding Plaintiff's Funds.  *Id.* ¶ 27.  Chase subsequently

closed Western's account and sent Defendants Shen and Koehler, the alleged owners of the Chase account, a check for the account balance, which included Plaintiff's Funds. *Id.* ¶¶ 4-6, 28. Shen and Koehler are both residents of Las Vegas, Nevada and the alleged sole members of Western. *Id.* ¶ 6. Plaintiff alleges that upon receipt of the check, Western, Koehler, and Shen (collectively referred to as the "Western Defendants") deposited Plaintiff's Funds into their various personal accounts. *Id.* ¶ 29.

Plaintiff subsequently canceled its contract with APKZ and demanded that the Western Defendants and APKZ return Plaintiff's Funds. *Id.* ¶¶ 30-31. APKZ returned $3,000.00 of Plaintiff's Funds to Plaintiff but refused to return the remaining $439,500.00 balance. *Id.* ¶ 32.

### B.    Procedural history

On June 2, 2021, Plaintiff filed the Complaint against Defendants for the return of Plaintiff's Funds. *See generally* Dkt. No. 1. The Complaint includes causes of action against APKZ for fraud and breach of contract and causes of action against the Western Defendants for conversion and unjust enrichment. *Id.* ¶¶ 33-52. Koehler was personally served with the Complaint on July 8, 2021. *See* Dkt. No. 14. Each of the other Defendants was served on or before July 30, 2021. *See* Dkt. Nos. 13, 15, 16. Defendants failed to timely file an answer or otherwise appear in the case.

On September 15, 2021, Plaintiff requested certificates of default against Defendants, which the Clerk of Court entered on September 24, 2021. *See* Dkt. Nos. 17, 18. As noted above, on November 23, 2021, Plaintiff moved for default judgment against all Defendants. *See* Dkt. Nos. 19, 21.

On February 1, 2022, the Court held a hearing on Plaintiff's Motion. *See* Feb. 1, 2022 Minute Entry. Defendants did not appear at the hearing, and the Court entered default judgment

against Defendants "for the sum of $475,870.85, which is the sum of $439,500.00 in principal plus pre-judgment interest at 9% from March 1, 2021, presently amounting to $36,370.85, plus costs, and disbursements of this action in the amount of $0.00" (the "Default Judgment"). *See* Dkt. No. 24. Plaintiff then proceeded to enforce the Default Judgment against Defendants in Nevada via writs of execution. *See* Dkt. No. 39, at 11-12;[2] *see also* Dkt. Nos. 26, 27, and 29.

On July 6, 2022, Koehler's Motion was filed, in which she sought vacatur of the Default Judgment pursuant to Fed. R. Civ. P. 60(b). *See* Dkt. No. 25. Koehler also sought dismissal of the Complaint against her in its entirety and an order "returning to Koehler all funds restrained and executed upon from Koehler's bank accounts or assets in connection with [the Default Judgment] procured by [P]laintiff, lifting all restraints imposed upon Koehler's bank accounts and/or assets and for a stay of all enforcement efforts against Koehler by plaintiff, their counsel and the writ of the Sherriff and/or Marshall of the County of Clark, State of Nevada, in connection with the February 1, 2022 judgment." *Id.*

In support of her motion, Koehler argues that: (1) the district court lacked personal jurisdiction over and thus the Default Judgment is void; and (2) because her failure to appear was not willful, she had a meritorious defense, and Plaintiff would not be prejudiced by vacatur, the Default Judgment is voidable. *See* Dkt. No. 25-1. In a declaration attached to her motion, Koehler stated that her "only connection with this lawsuit is through [her] status as ex-girlfriend of defendant [Shen]," and it was her understanding that her ex-boyfriend's attorney would represent her in this case. Dkt. No. 25-3 ¶¶ 8, 16. Koehler further reported that Plaintiff had garnished $45,982.20 from her bank account, and she seeks a stay of all enforcement actions brought against her. *See id.* ¶ 17.

---

[2] Page citations are to ECF stamped pages unless otherwise noted.

On July 13, 2022, the Court entered a text order denying Koehler's Motion.  *See* July 13, 2022 Text Order.

Koehler appealed this decision to the Second Circuit and raised the same arguments as in the district court, to wit: (1) the Default Judgment is void because the district court lacked personal jurisdiction; and (2) that the district court abused its discretion in denying her motion for vacatur under Rule 60(b) because she had established good cause to vacate the judgment.  *See* Dkt. No. 32, *see also JDH Unlimited Inc. v. Koehler*, No. 22-CV-1721, 2023 WL 6289951, at *1 (2d Cir. Sept. 27, 2023).

On September 27, 2023, the United States Court of Appeals for the Second Circuit vacated the Court's July 13, 2022 judgment and remanded the action for further proceedings.  *See* Dkt. No. 33; *see also JDH Unlimited Inc.*, 2023 WL 6289951 at *2 ("We thus remand so the district court can give [Plaintiff] an opportunity to respond and provide a reasoned explanation for its ruling on Koehler's motion under Rule 60(b).").  The Second Circuit noted that it did not "reach Koehler's argument that the [Default Judgment] is void for lack of personal jurisdiction or her challenge to the district court's initial decision to enter the [Default Judgment] in the alleged absence of such jurisdiction."  *JDH Unlimited Inc.*, 2023 WL 6289951, at *1 n.1.

On January 15, 2024, the parties requested a briefing schedule in response to the Second Circuit's Order, whereby Plaintiff would file its opposition to Koehler's Motion, and Koehler would file a reply in support of her motion.  *See* Dkt. No. 37.  Consistent with the Second Circuit's Order, the Court set a briefing schedule.  *See* January 15, 2024 Text Order.

On January 31, 2024, Plaintiff filed its opposition to Koehler's Motion, arguing that the Court has personal jurisdiction over Koehler and that the Default Judgment should not be vacated. *See* Dkt. No. 38.  As evidence of Koehler's involvement in Western's allegedly tortious activity

and thus, this Court's personal jurisdiction over her, Plaintiff submitted an affidavit and attachments thereto purporting to show Koehler as a signatory to Western's business checking account, *see* Dkt. No. 38-1 at 6, and advertisements on Reddit.com under username "jessiewesternmed" for medical equipment, which direct viewers to email addresses such as "jessie@shieldworks3pl.com" and "jesse.shen@westernmedsupplies.com[,]" *see* Dkt. No. 38-1 at 14-16.[3] Plaintiff further argues that this Court lacks the authority to vacate any orders entered by the U.S. District Court for the District of Nevada or to restrain any actions taken by officials in Clark County, Nevada in connection with the enforcement of the Default Judgment. *See* Dkt. No. 38.

Koehler filed a reply on February 7, 2024. *See* Dkt. No. 39. As set forth in the declaration attached to her reply, Koehler contends she was not active in advertising Western's products on various online platforms. Dkt. No. 39-1 ¶ 5. Instead, Koehler alleges that she was employed as an executive assistant for a company called ShieldWorks3PL but "never conducted any advertising on behalf of any of the co-defendants." *Id.* ¶ 6.[4] Koehler also alleges that she was unaware of her status as a signatory on Western's business checking account, that she was under the mistaken assumption that she was merely a beneficiary on her ex-boyfriend, co-Defendant Shen's bank account, and that in any event, this would not give rise to personal jurisdiction over her in New York. *Id.* ¶ 9; Dkt. No. 39 at 7. Koehler further contends that the account records submitted by

---

[3] Plaintiff also states that it filed a "criminal complaint against Shen and Koehler in Clark County, Nevada based upon their fraud, conversion and unjust enrichment" and that "[b]ased on the facts of the case, the District Attorney entered indictments against both Shen and Koehler who were both taken into custody and released on bail." Dkt. Nos. 38 at 5-6; 38-1 ¶ 15-16.

[4] In her reply, Koehler addressed the criminal complaint filed against her in Clark County, Nevada styled *State of Nevada v. Chek Shih Shen*, *Jessica Rose Koehler*, 22-CR-035202, in which Plaintiff had accused Koehler of committing theft. *See* Dkt. No. 39-1. The charge against Koehler appears to have been dismissed without any plea agreement or admission of wrongdoing. *See* Dkt. Nos. 39-1, 39-2.

Plaintiff do not establish that Plaintiff's funds were transferred to her upon liquidation of the Western business checking account.  *See* Dkt. No. 39-1 ¶ 9.

The undersigned then issued the March 2, 2024 Report and Recommendation, recommending that Koehler's Motion be granted and that the

> [Default Judgment] [against her] be vacated for lack of personal jurisdiction under Fed. R. Civ. P. 60(b)(4); that the complaint be dismissed against her; that the Court order the return of the funds collected from Koehler's bank account pursuant to the [Default Judgment]; and that the Court order Plaintiff to cease and desist all enforcement efforts attendant to the [Default Judgment].

Dkt. No. 45.  The March 2, 2024 Report and Recommendation also recommended that Plaintiff's Motion be denied without prejudice to renew, in light of the lack of personal jurisdiction over Koehler, as well as lack of compliance with this Court's Local Civil Rules.  *See id.*

On March 15, 2024, Plaintiff objected to the Report and Recommendation, arguing, *inter alia*, that transferring the case to U.S. District Court for the District of Nevada is a more "appropriate and just" remedy than dismissing the case as to Koehler, and that, to the extent the undersigned vacated the Default Judgment as to APKZ, Western, and Shen, doing so was erroneous.  *See* Dkt. No. 42 at 3-6.

Koehler responded to Plaintiff's objections, arguing that Plaintiff waived any argument in favor of transferring the case to the U.S. District Court of the District of Nevada by failing to raise such arguments previously.  *See* Dkt. No. 43 at 2-3.  Koehler further argued that Plaintiff's transfer arguments should be rejected in light of Plaintiff's failure to request a pre-motion conference, as is required to request a change of venue.  *See id.* at 5.

On May 16, 2025, Judge Kuntz directed the undersigned

> to issue an amended Report and Recommendation only as to Defendant Koehler's motion at ECF No. 25.  The amended Report and Recommendation should address: (1) whether the

9

> recommendation to vacate default judgment applies to all defendants or is limited to Defendant Koehler; and (2) if the Court vacates default judgment as to all defendants, whether it is proper to dismiss the case or to transfer venue to the United States District Court for the District of Nevada.

Dkt. No. 40.

## II.    Legal Standards

### A.    Vacating a Default Judgment

Fed. R. Civ. P. 55(c) provides that a "court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c).

"The Second Circuit has held that three factors govern a district court's decision to set aside a default judgment under either Rule 55(c) or 60(b): '(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.'" *Am. Transit Ins. Co. v. Bilyk*, 546 F. Supp. 3d 192, 197 (E.D.N.Y. 2021) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993)); *see also State St. Bank and Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166-67 (2d Cir. 2004) (same). "Related factors, such as whether the failure to follow a rule of procedure was a mistake made in good faith or whether the entry of default would bring about a harsh or unfair result, may also be considered." *Dongguan Cheng One Co. v. Desen Inc.*, No. 24-CV-3388 (ER), 2025 WL 2106583, at *3 (S.D.N.Y. July 28, 2025) (citing *Sony Corp. v. Elm State Electronics, Inc.*, 800 F.2d 317, 320 (2d Cir. 1986)). "These factors are applied more rigorously against a defendant after a default judgment has been entered." *Am. Transit Ins. Co.*, 546 F. Supp. 3d at 197 (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)). "Moreover, the preference for resolving disputes on the merits does not go so far as to relieve the defendant from the burden of proving the applicable factors." *Id.* (citing *Sony Corp.*, 800 F.2d at 320).

It is well-established that a default judgment entered by a court that lacks personal jurisdiction over the parties is void. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 138 (2d Cir. 2011). The Second Circuit has stated that "when a defendant declines to appear, a plaintiff generally proceeds by means of a motion for default judgment, *see generally* Fed. R. Civ. P. 55, and we agree with our sister circuits that before a court grants a motion for default judgment, it *may* first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) (emphasis added); *see also Mickalis Pawn Shop, LLC*, 645 F.3d at 133 (2d Cir. 2011).

"Personal jurisdiction is a necessary prerequisite to entry of a default judgment." *Burns v. Scott*, 635 F. Supp. 3d 258, 273 (S.D.N.Y. 2022) (internal quotations and citation omitted), *report and recommendation adopted*, No. 20-CV-10518 (JGK), 2022 WL 18858909 (S.D.N.Y. Nov. 9, 2022). In some circumstances, however, "courts have declined to exercise their discretion to review whether personal jurisdiction exists" during their analysis of a motion for default judgment. *Empire Cmty. Dev. LLC v. Campoverde*, No. 22-CV-4046 (RPK) (VMS), 2023 WL 7000878, at *3 (E.D.N.Y. Aug. 23, 2023) (citing *Kaplan v. Hezbollah*, No. 19-CV-3187 (BMC), 2022 WL 2207263, at *2-*3 (E.D.N.Y. June 21, 2022)). Courts also may examine personal jurisdiction in the default judgment context because of case- or party-specific reasons; for instance, if similar cases filed by the plaintiff had been dismissed for lack of personal jurisdiction. *See, e.g., Freeplay Music, LLC v. Nian Infosolutions Private Ltd.*, No. 16-CV-5883 (JGK) (RWL), 2018 WL 3639929, at *4 (S.D.N.Y. Jul. 10, 2018), *report and recommendation adopted*, 2018 WL 3632524 (Jul. 31, 2018).

At bottom, if the Court determines that a judgment is void for lack of personal jurisdiction, "it is a *per se* abuse of discretion" for the Court to deny a movant's motion to vacate under Fed. R. Civ. P. 60(b)(4). *State St. Bank & Tr. Co.*, 374 F.3d at 178 (citation omitted).

## B.    Transfer of Venue

"Three statutory provisions authorize district courts to transfer actions under certain limited circumstances: 28 U.S.C. §§ 1404(a)[], 1406(a)[], and 1631.[5]" *In re Ski Train Fire in Kaprun, Austria, on Nov. 11, 2004*, 224 F.R.D. 543, 546-47 (S.D.N.Y. 2004). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Section 1406(a) states that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Section 1631 is inapplicable here, as the Second Circuit has suggested that it "authorizes transfers only to cure lack

---

[5] Section 1631 provides that

> [w]henever a civil action is filed . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631.

of subject matter jurisdiction[,]" and not personal jurisdiction. *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 179 n.9 (2d Cir. 2000).

District Courts in the Second Circuit "appl[y] a two-part test to motions to transfer venue under § 1404(a)." *Kumaran v. Nat'l Futures Ass'n*, No. 1:20-CV-03668 (GHW) (SDA), 2023 WL 6890839, at *3 (S.D.N.Y. Oct. 19, 2023) (quoting *Smart Skins LLC v. Microsoft Corp.*, No. 14-CV-10149 (CM), 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015). As an initial matter, courts determine "whether the case could have been brought in the proposed transferee district." *Id.* (citing *1724982 Alberta ULC v. Park Ave. Wholesale, Inc*., No. 21-CV-04343 (GHW), 2021 WL 3115125, at *2 (S.D.N.Y. July 20, 2021) (internal quotation marks omitted). "An action might have been brought in the forum to which the movant seeks to transfer it if subject matter jurisdiction, personal jurisdiction, and venue would have been proper in the transferee court at the time of filing." *Id.* (citing *1724982 Alberta ULC*, 2021 WL 3115125, at *2) (internal quotation marks omitted).

Once a court determines the case could have been brought in the proposed transferee district, the court must "determine whether transfer is appropriate." *Megna v. Biocomp Lab'ys Inc*., 220 F. Supp. 3d 496, 497 (S.D.N.Y. 2016). In evaluating whether to transfer a case to another venue, Courts typically consider:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice.

*Kumaran*, 2023 WL 6890839, at *2 (citing *1724982 Alberta ULC*, 2021 WL 3115125, at *2).

"No one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case." *Id.* (quoting *Smart Skins LLC*, 2015 WL 1499843, at *4).  To the contrary, "the factors 'serve as guideposts to the Court's informed exercise of discretion.'" *Id.* (quoting *1724982 Alberta ULC*, 2021 WL 3115125, at *2).  Courts have ample discretion in evaluating convenience and fairness and the same are done so on a case-by-case basis.  *See D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

Additionally, the "Second Circuit has held that § 1406(a) permits courts to transfer cases in the interest of justice whenever either personal jurisdiction or venue is improper." *Aldino v. I.K. Sys., Inc.*, No. 18-CV-6781 (DLI) (CLP), 2019 WL 4887655, at *5 (E.D.N.Y. Sept. 30, 2019) (citing *Corke v. Sameiet M. S. Song of Norway*, 572 F.2d 77, 79 (2d Cir. 1978); *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 435 (2d Cir. 2005).  "[C]ourts have recognized that if transfer pursuant to 1404(a) is appropriate, then *a fortiori* transfer is appropriate under 1406(a) . . . and that the crucial determination under either section is whether the proposed transfer is in the interest of justice." *Id.* (quoting *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 400 n.3 (S.D.N.Y. 2004)); *SongByrd, Inc.*, 206 F.3d at 179 n.9 (citing *Corke* and recognizing propriety of § 1406 transfer to cure lack of personal jurisdiction even when venue proper).  A court has the power to transfer venue even if it lacks personal jurisdiction over the defendant.  *Fort Knox Music Inc. v. Baptiste*, 257 F.3d 108, 112 (2d Cir. 2001).

Courts have discretion to transfer a case *sua sponte* under 28 U.S.C. § 1404.  *See Barnet v. Elan Corp.*, 236 F.R.D. 158, 164 (S.D.N.Y. 2005) ("Although a transfer pursuant to § 1404(a) is typically premised on the motion of a party, the statute is broad enough that a court can transfer a case on its own initiative.").  A court may transfer venue on motion from either party or *sua sponte*. *See Lead Indus. Ass'n v. OSHA*, 610 F.2d 70, 79-80 n.17 (2d Cir. 1979) ("The broad language of

28 U.S.C. § 1404(a) would seem to permit a court to order transfer *sua sponte*."); *see also RBG Mgmt. Corp. v. Vill. Super Mkt., Inc*., No. 22-CV-7996 (JLR) (OTW), 2024 WL 50239, at *1 (S.D.N.Y. Jan. 4, 2024); *Delacruz v. Giermak*, No. 21-CV-3877 (ALC) (OTW), 2021 WL 5871424, at *2 (S.D.N.Y. Nov. 12, 2021).

**III.    Koehler's Motion**

**A.    Whether this Court has Personal Jurisdiction over Koehler**

The Court's first consideration is whether personal jurisdiction over Koehler exists in New York.

To determine whether there is personal jurisdiction over a defendant, the Court must first look to state law—in this case, New York law.  *Spiegel v. Schulmann*, 604 F.3d 72, 76 (2d Cir. 2010) ("A district court's personal jurisdiction is determined by the law of the state in which the court is located.").  After first determining whether New York's long-arm statute permits the Court's exercise of personal jurisdiction over Koehler, the Court must then decide whether that exercise of jurisdiction is permissible under the Due Process Clause of the Fourteenth Amendment. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012); *Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 37 (2d Cir. 2001) ("district courts must conduct a two-part analysis, looking first to the state's long-arm statute and then analyzing whether jurisdiction comports with federal due process.").  New York's long-arm statute provides two bases to obtain jurisdiction over a foreign entity: general and specific.  *See* CPLR §§ 301 (general), 302(a) (specific).

Here, Plaintiff alleges in the Complaint (Dkt. No. 1 ¶ 8) that personal jurisdiction over Koehler is proper under CPLR § 302(a)(3)(ii), which states:

> [A] court may exercise personal jurisdiction over any non-[resident]
> . . . who in person or through an agent . . . commits a tortious act

> [outside New York State] causing injury to person or property within [New York State] . . . if [they] . . .
>
> expect[] or should reasonably expect the act to have consequences in [New York State] and derive[] substantial revenue from interstate or international commerce.

In *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 302 (2011), the New York Court of Appeals established the following five-part test for establishing personal jurisdiction under CPLR § 302(a)(3)(ii): "(1) the defendant must have committed a tortious act outside of New York; (2) the cause of action at issue must have arisen as a result of this act; (3) this act must have caused an injury to a person or property in New York; (4) the defendant expected or should have reasonably expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from either interstate or international commerce." *Jakob v. JPMorgan Chase Bank, N.A.*, No. 22-CV-3921 (HG), 2023 WL 5350814, at *4 (E.D.N.Y. Aug. 19, 2023) (citing *Penguin*, 16 N.Y.3d at 302). "Each element of this test is essential, and if plaintiff fails to proffer sufficient evidence for any element, it is dispositive of the issue of personal jurisdiction under this provision." *Krisko v. Marvel Ent., LLC*, 473 F. Supp. 3d 288, 300 (S.D.N.Y. 2020) (citing *Yash Raj Films (USA) Inc. v. Dishant.com LLC*, No. 08-CV-2715 (ENV) (RML), 2009 WL 4891764, at *8 (E.D.N.Y. Dec. 15, 2009)).

### 1.    Torts committed outside New York

The first element is whether Koehler committed a tortious act outside New York. *See* CPLR § 302(a)(3)(ii). In order to satisfy this element, Plaintiff "need not actually prove that defendant committed a tort but rather need only state a colorable cause of action." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 125 (2d Cir. 2002) (Sotomayor, J.) (citation omitted). Plaintiff asserts two causes of action against Koehler in the Complaint: one for conversion and the other for unjust enrichment. *See* Dkt. No. 1 at 7-8.

16

Under New York law, conversion occurs "when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. New York Organ Donor Network, Inc.*, 8 N.Y.3d 43, 49-50 (2006); *see also Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir. 2006). A plaintiff can state a claim for conversion of money where there is "a specific, identifiable fund and an obligation to return or otherwise treat in a particular manner the specific fund in question." *Cnty. of Nassau v. Expedia, Inc.*, 120 A.D.3d 1178, 1180 (2d Dep't 2014). "The tort of conversion does not require defendant's knowledge that he is acting wrongfully, but merely an intent to exercise dominion or control over property in a manner inconsistent with the rights of another." *LoPresti v. Terwilliger*, 126 F.3d 34, 41–42 (2d Cir. 1997) (citation omitted). "A claim of conversion under New York law cannot be predicated on a mere breach of contract." *Rynasko v. New York Univ.*, 63 F.4th 186, 196 (2d Cir. 2023).

Here, Plaintiff alleges that the Western Defendants are unlawfully withholding the $439,500.00 that Plaintiff originally sent to APKZ for the purchase of the gloves, *i.e.*, "Plaintiff's Funds," and which APKZ, in turn, wired to the Western Defendants' bank account for the purchase of the gloves. *See* Dkt. No. 1 ¶¶ 47-51. While the Western Defendants arguably had a possessory right in Plaintiff's Funds vis-à-vis their contract with APKZ, that right was extinguished when APKZ and Western agreed to cancel their contract and Plaintiff made a demand for the return of Plaintiff's Funds. *See St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 179 (E.D.N.Y. 2010) ("A cause of action for conversion is complete when the party in possession of the property openly interferes with the true owner's rights in it . . . . If the party in possession has not acquired possession wrongfully, and has not otherwise exercised wrongful dominion over the property, the possessor does not convert the property until he refuses a demand for its return from a party with

a superior and immediate right of possession."). At that point in time, the Western Defendants'—and Koehler's—possession of Plaintiff's Funds became wrongful and gave rise to a claim for conversion. *See, e.g.*, *Jami Mktg. Servs., Inc. v. Howard*, No. 86-CV-3352 (JMM) (CMA), 1988 WL 46106, at *3 (E.D.N.Y. Apr. 26, 1988) (holding that plaintiff stated a claim for conversion against officers and shareholders of corporate defendant by alleging that they "converted and appropriated" a specified sum of money due to the plaintiff for their own use and purpose); *see also Petrone v. Davidoff Hutcher & Citron, LLP*, 150 A.D.3d 776, 777-78 (2d Dep't 2017) (holding that plaintiff stated a claim for conversion where funds were sent to defendant for a designated purpose and defendant used the funds for another purpose).

Plaintiff also asserts a claim against Koehler for unjust enrichment. To prevail on a claim for unjust enrichment under New York law, Plaintiff must establish: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006). Plaintiff has stated a colorable claim for unjust enrichment by alleging that Koehler has enriched herself at Plaintiff's expense by wrongfully taking and withholding Plaintiff's Funds for her own benefit and refusing to return them to Plaintiff. *See* Dkt. No. 1 ¶¶ 52-55.

Plaintiff has sufficiently alleged causes of action against Koehler for conversion and unjust enrichment. And because at all relevant times, Koehler was a resident of Nevada, the Western Defendants' bank account was based in Nevada, and Koehler's personal bank account was also based in Nevada, Koehler's allegedly tortious acts all occurred outside of New York for purposes of CPLR § 302(a)(3)(ii).

### 2.    Cause of action arising out of the tortious acts

Second, the Court must assess whether Plaintiff's claims for conversion and unjust enrichment arose from Koehler's tortious acts.  "In order to meet this element of the jurisdictional test, the out-of-state act must be so close to the injury that reasonable people would regard it as a cause of the injury."  *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F.Supp.2d 458, 467 (S.D.N.Y. 2008) (cleaned up).

Here, this element is satisfied because Plaintiff's causes of action for unjust enrichment and conversion stem from allegations that the Western Defendants are withholding Plaintiff's Funds.  *See Lawson v. Full Tilt Poker Ltd.*, 930 F. Supp. 2d 476, 485 (S.D.N.Y. 2013) (finding element satisfied in conversion case against individual defendants because "[a]lthough the Individual Defendants are not alleged to have personally participated in blocking access to the accounts, the [Complaint] alleges that the Individual Defendants took millions of dollars of player funds.").  Accordingly, this Court finds that Plaintiff has established the second element of CPLR § 302(a)(3)(ii).

### 3.    Injury in New York

Next, the Court must determine whether Koehler's tortious acts caused an injury to Plaintiff in New York.

To establish jurisdiction under CPLR § 302(a)(3)(ii), the plaintiff must show that the defendant's tortious acts caused an injury to plaintiff within New York.  The general rule is that the location of the injury is determined by the place where the original event causing the injury occurs, *i.e.*, the "situs-of-injury."  *See Mareno v. Rowe*, 910 F.2d 1043, 1046 (2d Cir. 1990) (quoting *Hermann v. Sharon Hosp., Inc.*, 135 A.D.2d 682, 683 (2d Dep't 1987)).

"Generally, in a conversion case, the tort and the injury will occur in the same location—where the conversion actually occurred." *Popper v. Podhragy*, 48 F.Supp.2d 268, 274 (S.D.N.Y. 1998).  In conversion or unjust enrichment cases involving the loss of money, the situs-of-injury is either where "the bank accounts holding the funds of the plaintiff were located and controlled or where the [defendants] managed those accounts." *Berdeaux v. OneCoin Ltd.*, 561 F. Supp. 3d 379, 407 (S.D.N.Y. 2021); *Landau v. New Horizon Partners, Inc.*, 02-CV-6802 (JGK), 2003 WL 22097989, at *7 (S.D.N.Y. Sept. 8, 2003) ("It is undisputed that the bank accounts holding the funds of the plaintiff were located and controlled in Sweden, and that [defendant] manages its accounts from Sweden. . . . Any alleged conversion of funds or unjust enrichment took place in Sweden, and not in New York, because the funds were located in Sweden.").

As explained above, the conversion of Plaintiff's Funds occurred when the Western Defendants refused to return Plaintiffs' Funds despite the cancelation of the APKZ-Western contract and Plaintiff's demand for the return of the Funds.  At that point in time, the Western Defendants were holding Plaintiff's Funds in Western's bank account.  While Plaintiff does not specify where Western's bank account was located, the Court can infer that the account was located in Nevada because that is where Western is located.  *See Weintraub v. Empress Travel Trevose, Two-L's Ltd.*, No. 17-CV-00552 (PGG), 2018 WL 4278336, at *11 n.5 (S.D.N.Y. Mar. 6, 2018) ("Given that Plaintiffs reside in New Jersey, it is reasonable to infer that their bank accounts are located in New Jersey.").  Indeed, Plaintiff's Exhibit A, attached to Plaintiff's opposition to Koehler's Motion, shows a Las Vegas business address for Western's Chase bank account.  *See* Dkt. No. 38-1, at 7.  Further, the business signature card shows that the bank account was opened

by a Chase bank located at the Trailwood and Village Center in Las Vegas, and the telephone number associated with the bank has a Las Vegas area code (702).[6]  *See id.* at 6.

Accordingly, the situs-of-injury for purposes of CPLR § 302(a)(3)(ii) was in Nevada, not New York.[7]  Thus, personal jurisdiction over Koehler does not exist in New York.

### 4.    Expectation of consequences in New York

As noted above, each element of the *Penguin* five-part test "is essential, and if plaintiff fails to proffer sufficient evidence for any element, it is dispositive of the issue of personal jurisdiction under this provision."  *Krisko*, 473 F. Supp. 3d at 300.  Thus, Plaintiff's failure to establish that Koehler caused Plaintiff to suffer an injury in New York is dispositive regarding personal jurisdiction here.

Nonetheless, even if Plaintiff had shown a requisite harm in New York, there is nothing in the Complaint to demonstrate that Koehler expected, or should have reasonably expected, her actions to cause consequences in New York.  *See Penguin*, 16 N.Y.3d at 302.  At best, Koehler should have reasonably expected her actions to cause consequences in Florida because that is where the incoming wire of Plaintiff's Funds originated.  *See* Dkt. No. 1 ¶ 21.  While Plaintiff claims that the Zoom meeting between Plaintiff, Western, and APKZ should have alerted Koehler to the New York consequences of her actions, Plaintiff does not rebut Koehler's assertion that she was not at the meeting.  *Id.* ¶ 25.  Indeed, Koehler states in a sworn declaration that she was "never

---

[6] *See* https://locator.chase.com/nv/las-vegas/1990-village-center-cir (last visited September 3, 2025).

[7] While this Court does not doubt that Plaintiff felt economic consequences in New York, these injuries are too attenuated to support an exercise of personal jurisdiction under CPLR § 302(a)(3).  *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 209 (2d Cir. 2001) ("The occurrence of financial consequences in New York due to the fortuitous location of plaintiffs in New York is not a sufficient basis for jurisdiction under § 302(a)(3) where the underlying events took place outside New York."); *Fantis Foods, Inc. v. Standard Importing Co.*, 49 N.Y.2d 317, 326 (1980) (holding that the requisite injury must be of a direct nature and not a remote, derivative, or consequential injury which occurred in New York only because the plaintiff was domiciled there).

a part of any Zoom meeting between the parties[;]" Plaintiff has not rebutted this assertion. Dkt. No. 39-1 ¶ 4.

Importantly, the presence of Western at that meeting and the knowledge that Western purportedly gained about Plaintiff's association with New York cannot be imputed to Koehler despite her alleged status as one of the Western Defendants in the Complaint. *See Ontel Products, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995) ("In New York, the individual who owns a corporation is generally not subject to personal jurisdiction as a result of the corporation's activities unless (1) the corporate veil can be pierced or (2) the corporation acted as an agent for the owner."); *see also Wolo Mfg. Corp. v. ABC Corp.*, 349 F. Supp. 3d 176, 195 (E.D.N.Y. 2018) ("plaintiff's conclusory and vague allegations in the amended Complaint, which generally refer to 'defendants' in the plural and fail to describe [owner's] specific role, if any, in the alleged acts of which plaintiff complains, are insufficient to demonstrate [owner's] personal involvement in any of the alleged misconduct.").

Moreover, Plaintiff cannot rely on allegations levied against the Western Defendants "to satisfy [its] burden to establish a *prima facie* case of personal jurisdiction against *each* Defendant as to *each* claim asserted." *Berdeaux*, 561 F. Supp. at 397 (holding that the Court was unable to exercise personal jurisdiction over a particular defendant based on allegations that fail to distinguish between the group defendants) (emphasis in original); *HSM Holdings, LLC v. Mantu I.M. Mobile Ltd.*, No. 20-CV-967 (LJL), 2021 WL 918556, at *15 (S.D.N.Y. Mar. 10, 2021) ("In relying only on group pleadings, in which it conflates multiple parties and fails to provide specific allegations, Plaintiff neglects its burden of establishing personal jurisdiction over each defendant.").

Accordingly, Plaintiff fails to establish the fourth element of the *Penguin* five-part test.

5.    **Substantial revenue from interstate and/or international commerce**

Plaintiff also fails to demonstrate the fifth element of the *Penguin* five-part test.  In short, Plaintiff has not established that Koehler derived substantial revenue from either interstate or international commerce.  Apart from a passing reference in the Complaint and opposition, Plaintiff does not explain how Koehler personally derived any revenue from interstate or international commerce. *See Aziyz v. Cameca*, No. 1:22-CV-579 (TJM), 2023 WL 6065850, at *13 (N.D.N.Y. Sept. 18, 2023) ("Plaintiff's lack of specific factual allegations relative to the Individual Defendants on this issue defeats any conclusion that personal jurisdiction may be obtained over the Individual Defendants pursuant to Section 302(a)(3)(ii).").  Plaintiff's conclusory allegations are insufficient to satisfy this fifth element of the *Penguin* five-part test. *See, e.g., Davey v. PK Benelux B.V.*, No. 20-CV-5726 (VB), 2022 WL 1289341, at *4 (S.D.N.Y. Apr. 29, 2022) (finding that plaintiff's "conclusory allegation that defendant 'derives substantial revenue from its sales of its subject products in the U.S. and in New York' is insufficient for the Court to exercise personal jurisdiction over Defendant" under CPLR § 302(a)(3)(ii)); *Snowbridge Advisors LLC v. Eso Cap. Partners UK, LLP*, 589 F. Supp. 3d 401, 415 (S.D.N.Y. 2022) (finding that plaintiff's allegations that defendants "'regularly conduct' business in New York," which "d[id] not specify further or otherwise allege that they derive substantial revenues from interstate or international commerce" were insufficient to establish personal jurisdiction under CPLR § 302(a)(3)).

Based on the foregoing, the undesigned finds that the Default Judgment is void as to Koehler for lack of personal jurisdiction under Fed. R. Civ. P. 60(b)(4) and respectfully recommends that Koehler's Motion be granted.  In light of this finding, the Court need not consider Koehler's other arguments in favor of vacatur. *See State St. Bank*, 374 F.3d at 178 (it is a "*per se*

abuse of discretion" for a court to deny a motion to vacate a default judgment where the court lacks personal jurisdiction over the defendant).

### B.    The Court Vacates Plaintiff's Default Judgment Only as to Koehler

The undersigned also expressly notes that its recommendation of vacating Plaintiff's Default Judgment applies solely to Koehler, who is the only defendant to have moved for such relief. *See Ray v. Choueka,* 683 F. Supp. 3d 427, 428 n.1, 432 (S.D.N.Y. 2023) (Rakoff, J.) (vacating default judgment as to two defendants who moved for such relief on the basis of improper service, while leaving default judgment undisturbed as to nonmovants); *Jackson v. Tanfoglio Guiseppe, S.R.L.*, 615 F.3d 579, 582 n.3 (5th Cir. 2010) ("Only [one defendant] appeared in the case and moved to vacate the default judgment.  The default judgment is still in effect as to Guiseppe S.r.l. and Guiseppe S.p.a.").

The undersigned respectfully does not recommend that default be vacated against APKZ, Western, or Shen.  As Plaintiff notes (Dkt. No. 42), APKZ, Western, or Shen were served with process over four years ago (Dkt. Nos. 13, 15, 16) and have failed to participate in any fashion in this case.

The undersigned notes that it need not inquire into the Court's personal jurisdiction over APKZ, Western, or Shen.  Courts in the Second Circuit are not obligated to undertake a personal jurisdiction analysis before granting a motion for default judgment.  *See Sinoying Logistics Pte Ltd.*, 619 F.3d at 213 n.7 ("We need not – and explicitly do not – address here whether a district court *must* investigate its personal jurisdiction over defendant before entering a default judgment. We leave that issue for another day and hold only that a court *may* raise personal jurisdiction *sua sponte* when a defendant has failed to appear.") (emphasis in original); *Ohio Sec. Ins. Co. v. Veteran Constr. Servs., LLC*, No. 23-CV-257 (SVN), 2024 WL 1287583, at *4 n.2 (D. Conn. Mar.

26, 2024) ("On default judgment, the Second Circuit has not held that a court must *sua sponte* determine the adequacy of personal jurisdiction, so the Court does not do so here."). Further, as other courts in this Circuit have concluded, independently inquiring into the personal jurisdiction of the parties does not always preserve judicial resources and in some instances may result in duplicate work. *See CKR L. LLP v. Anderson Invs. Int'l, LLC*, 544 F. Supp. 3d 474, 479-80 (S.D.N.Y. 2021). "And if the [other Defendants] have no intention of attacking the default judgment – that is, if they effectively waive their personal jurisdiction arguments – then the [] analysis will have been unnecessary." *Id*. at 480. Indeed, when a court waits "until a party actually contests personal jurisdiction, [it] ensures that it will resolve only those issues that are properly presented." *Id*. Significantly, "[i]f a court declines to conduct such an inquiry, the party against whom default judgment is entered does not lose the ability to contest personal jurisdiction because a judgment entered without jurisdiction may be challenged as void under Rule 60(b)(4), *see "R" Best Produce, Inc. v. DiSapio*, 540 F.3d 115, 123 (2d Cir. 2008), or via a direct appeal, *see Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001) (explaining that a defendant may directly appeal default judgment without moving to vacate under Rule 60(b))." *Weiss v. Shree Baidyanath Ayurved Bhawan Pvt. Ltd.*, No. 21-CV-155 (ERK) (JRC), 2024 WL 1556888, at *3 (E.D.N.Y. Apr. 10, 2024).

Additionally, as noted above, Judge Kuntz's May 15, 2025 Order regarding this amended Report and Recommendation directs the undersigned to address whether, "if the Court vacates default judgment as to all Defendants, [] it is proper to dismiss the case or to transfer venue to the United States District Court for the District of Nevada." Dkt. No. 45. Here, while vacating the Default Judgement only as to Koehler, the undersigned recommends transfer of this entire case to the U.S. District Court for the District of Nevada. As discussed further below and as Plaintiff

acknowledges (*see* Dkt. No. 42 at 6), transfer of this entire case to the U.S. District Court for the District of Nevada obviates potential personal jurisdiction issues related to APKZ, Western, or Shen. Moreover, transfer mitigates the prejudice to Plaintiff of a dismissal, which may create timeliness issues upon refiling, and will not prevent APKZ, Western, or Shen from seeking to vacate the Default Judgment against them as appropriate in the U.S. District Court for the District of Nevada.

### C.    Stay of Enforcement, Lifting of Restraints, and Return of Funds

Koehler seeks a return of all funds executed upon in connection with the Default Judgment, which total approximately $45,982.20; the lifting of the restraint imposed upon her bank account by Plaintiff; and a stay of all enforcement actions brought against her. *See* Dkt. No. 25. In response, Plaintiff argues, without citation to legal authority, that the Court lacks the ability "to lift a bank account levy issued out of the court in the United States District Court for the District of Nevada and to enter an order restraining JDH, counsel[,] and officials in Clark County Nevada from taking certain actions." Dkt. No. 38, at 9.

It is black-letter law that when money is paid pursuant to a court order that is subsequently reversed, the disadvantaged party has a right to restitution. *In Baltimore & Ohio R.R. v. United States*, 279 U.S. 781, 785-86 (1929), the Supreme Court found that railroads benefitting from an invalid order of the Interstate Commerce Commission were under an obligation to make restitution after the reversal of the decree sustaining that order. In relevant part, the Court held:

> The right to recover what one has lost by the enforcement of a judgment subsequently reversed is well established. And, while the subject of the controversy and the parties are before the court, it has jurisdiction to enforce restitution and so far as possible to correct what has been wrongfully done.

*Id.* at 786. This holding was reaffirmed by the Supreme Court in *United States v. Morgan*, 307 U.S. 183 (1939), and has been followed in the Second Circuit. *See Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 145 (2d Cir. 2019) ("[T]he baseline rule in this Circuit is that 'a party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby.'" (quoting *LiButti v. United States*, 178 F.3d 114, 120 (2d Cir. 1999)). Under *Morgan*, a court must restore that which has been "given or paid under the compulsion of a judgment" where "its judgment has been set aside and justice requires restitution." 307 U.S. at 197.

Applying these principles here, it is recommended that the Court order Plaintiff to return any funds it seized specifically from Koehler in connection with the Default Judgment and to cease any enforcement efforts attendant to the Default Judgment as to Koehler.[8] The Court's authority here derives from its power over Plaintiff, a party who is indisputably within the Court's jurisdiction. *See Baltimore & Ohio R.R.*, 279 U.S. at 786 ("It was the duty of the court to retain jurisdiction of the case, enter a decree that appellants are entitled to restitution."); *see also EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 208 (2d Cir. 2012) ("[p]rocess subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." (quoting *Riggs v. Johnson Cnty.*, 73 U.S. 166, 187 (1867)).

## IV.    <u>Transfer of Venue</u>

This Court also respectfully recommends that this case be transferred to the U.S. District Court for the District of Nevada.

---

[8] In an abundance of caution, the undersigned notes that Plaintiff may still seek to enforce its Default Judgment against APKZ, Western, and Shen. *Cf.* Dkt. No. 42 at 5.

A.      **Venue is Proper in the U.S. District Court for the District of Nevada**

As noted above, the initial inquiry regarding whether transfer is appropriate is to determine whether the case could have been brought in that venue in the first instance, *i.e.*, whether "subject matter jurisdiction, personal jurisdiction, and venue would have been proper in the transferee court at the time of filing." *Kumaran*, 2023 WL 6890839, at *2 (citing *1724982 Alberta ULC*, 2021 WL 3115125, at *2) (internal quotation marks omitted).

Here, subject matter jurisdiction is present in the District of Nevada for the same reasons it is present in the Eastern District of New York, namely: pursuant to 28 U.S.C. 1332(a), the parties are completely diverse, and the amount in controversy exceeds $75,000. *See* 28 U.S.C. 1332(a); Dkt. No. 1 ¶¶ 7. Indeed, Plaintiff is a New York corporation with its principal place of business in New York, *id*. ¶ 1; APKZ is a Florida corporation with its principal place of business in Florida, *id* ¶ 2; Western, is a Nevada limited liability company with a registered agent address in Nevada, *id* ¶ 3; and Shen and Koehler, Western's alleged members, are Nevada residents, *id*. ¶¶ 4-6.

The undersigned also finds that personal jurisdiction is proper in the District of Nevada as to the Western Defendants and that general jurisdiction exists there over the same by nature of their status as Nevada residents. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (noting that general jurisdiction exists where the defendant's "affiliations with the [s]tate are so 'continuous and systematic' as to render them essentially at home in the forum [s]tate."); *Mona v. Sifen*, No. 22-CV-00821 (CDS) (EJY), 2024 WL 1118265, at *4 (D. Nev. Mar. 13, 2024). Indeed, with regard to individuals, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler*, 571 U.S. at 137.

And, while less compelling, personal jurisdiction exists over APKZ in the U.S. District Court for the District of Nevada. *See* Nev. Rev. Stat. § 14.065(1) ("A court of this state may

28

exercise jurisdiction over a party to a civil action on any basis not inconsistent with the Constitution of this state or the Constitution of the United States."). As noted above, APKZ is a Florida resident. *See* Dkt. No. 1 ¶ 2. The U.S. Court of Appeals for the Ninth Circuit applies a three-part test to determine whether exercise of specific personal jurisdiction is appropriate over a nonresident defendant. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). First,

> the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. [] Second, the claim must be one which arises out of or relates to the defendant's forum-related activities. [] Finally, the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. Courts in the Ninth Circuit apply a "purposeful availment" analysis for cases sounding in contract and a "purposeful direction" analysis for cases sounding in tort. *Id.*

Here, as alleged in the Complaint, APKZ contracted with Western at least once to procure a large shipment of gloves, which entailed wiring $439,500 of Plaintiff's funds into Western's business checking account located in Nevada. *See* Dkt. No. 1 ¶¶ 20-21. Indeed, materials submitted by Plaintiff also suggest the gloves would ship from a warehouse in Nevada, *see* Dkt. No. 38-1 at ¶¶ 14-16, a fact of which APKZ was likely aware. Moreover, when the shipment was not forthcoming, Plaintiff, APKZ, and Western held a Zoom call regarding the dispute, in attempt to extract either the gloves or Plaintiff's funds, both of which remained in Nevada. *See id.* ¶ 9. These actions are likely sufficient to conclude APKZ willfully subjected itself to personal jurisdiction in Nevada. *See Schwarzenegger*, 374 F.3d at 802 ("A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists

29

of evidence of the defendant's actions in the forum, such as executing or performing a contract there.").

While the Ninth Circuit has held that a single, "one-shot affair" eBay transaction, without more, was insufficient to confer personal jurisdiction over a defendant, *see Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008), the present situation is distinguishable. Indeed, APKZ's Nevada-related conduct with the Western Defendants and the devolvement thereof created "ongoing obligations" necessitating further communications and a Zoom call, *see* Dkt. No. 38-1 ¶ 9, which are sufficient to create, on balance, a "substantial connection" with the forum state by which APKZ purposely availed itself of the privilege of conducting business in Nevada. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 (1957) (if a "substantial connection" with the forum exists, even a single act may support limited personal jurisdiction over a nonresident); *see also Boschetto*, 539 F.3d at 1017. The fact that APKZ's Nevada-based conduct was the alleged downstream result of its fraudulent representation to Plaintiff that it had the gloves in stock further distinguishes this case from *Boschetto* and its progeny. 539 F.3d at 1011; Dkt. No. 38-1 ¶¶ 4-5.

Moreover, Plaintiff's claims against APKZ for fraud and breach of contract relate to APKZ's conduct concerning the State of Nevada, to wit: subcontracting to Western its obligation to provide gloves to Plaintiff and sending Plaintiff's funds to Western's business checking account in Nevada to accomplish the same. Indeed, but for APKZ's conduct aimed at Western and thus, the State of Nevada, Plaintiff's alleged injury would not have occurred, because Western would not have had the opportunity to withhold Plaintiff's funds and refuse to produce the gloves. *See Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1321-22 (9th Cir. 1998) (noting that a plaintiff's claims emanate from a defendant's forum-related conduct if "but for" alleged the contacts, the cause of action would not have arisen).

Third, the exercise of jurisdiction is reasonable, and comports with notions of "fair play and substantial justice." *See Schwarzenegger*, 374 F.3d at 802. Courts in the Ninth Circuit have held that whether an exercise of jurisdiction is reasonable depends on seven factors, none of which is dispositive. *See Ziegler v. Indian River Cnty.*, 64 F.3d 470, 475 (9th Cir. 1995) (the factors are "(1) the extent of the defendant's purposeful injection into the forum; [] (2) the defendant's burdens from litigating in the forum; [] (3) the extent of conflict with the sovereignty of the defendant's state; [] (4) the forum state's interest in adjudicating the dispute; [] (5) the most efficient judicial resolution of the controversy; [] (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and [] (7) the existence of an alternative forum."). Courts in the Ninth Circuit have held that rebutting the reasonability of a court's exercise of personal jurisdiction is the burden of the party opposing such jurisdiction. *See Schwarzenegger*, 374 F.3d at 802 ("the burden then shifts to [Defendant] to 'present a compelling case' that the exercise of specific jurisdiction would not be reasonable.") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)).

Here, on balance, the Court finds that the exercise of personal jurisdiction over APKZ is reasonable. Indeed, while APKZ's purposeful injection into the forum might be limited to this course of conduct, it was the downstream result of an allegedly fraudulent misrepresentation to Plaintiff and entailed various communications and an alleged Zoom call with the Nevada-based Defendants. The burden upon APKZ, a Florida entity, of litigating in Nevada, is likely comparable to that of litigating in New York or another foreign jurisdiction and is thus negligible. Moreover, there does not appear to be posed here a conflict with the sovereignty of Florida. Nevada has arguably the highest interest of any state in litigating this dispute, in which Nevada-based individuals and an entity are alleged to have committed substantial misconduct. Indeed, as noted

31

*infra*, the locus of operative facts and likely witnesses renders Nevada the location where the most efficient judicial resolution of the controversy can occur. The forum is also important to Plaintiff's interest in convenient and effective relief, in consideration of the jurisdictional issues that exist as to Koehler in New York, as discussed above. And, finally, while New York and possibly Florida each exist as an alternative forum, neither are as optimal as Nevada, in consideration of the totality of the circumstances.

But even if APKZ were to subsequently challenge the exercise of personal jurisdiction over it by the U.S. District Court for the District of Nevada, and even if it should later be determined such personal jurisdiction did not exist over APKZ, transfer to U.S. District Court for the District of Nevada would still be in the interest of justice here, where, as established above, personal jurisdiction lies as to Western, Shen, and Koehler, who comprise all but one of the Defendants. *See Corke*, 572 F.2d at 80 (holding transfer is in the interest of justice, in part because "[it] would apparently enable appellant to obtain personal jurisdiction over some or all of the defendants[.]").

The undersigned accordingly respectfully recommends a finding that venue is proper in the U.S. District Court for the District of Nevada.

### B.       Transfer is Appropriate to the U.S. District Court for the District of Nevada

Once a court finds that the case could have been brought in the proposed transferee district, the same must "determine whether transfer is appropriate" in light of nine variables pertaining to geographical and practical considerations. *See Megna*, 220 F. Supp. 3d at 497. "To that end, the court may consider a host of equitable factors, including (1) convenience of witnesses; (2) convenience of the parties; (3) location of relevant documents and the relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative

familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice." *United States v. Rare Breed Triggers, LLC*, 669 F. Supp. 3d 169, 179 (E.D.N.Y. 2023). "Courts have discretion when balancing these factors and no one factor is decisive." *Jibowu v. Target Corp.*, No. 17-CV-3875 (PKC) (MMH), 2024 WL 4753294, at *3 (E.D.N.Y. Nov. 12, 2024) (quoting *Hobby Lobby Stores Inc. v. Obbink*, No. 21-CV-3113 (RPK) (MMH), 2023 WL 6214240, at *3 (E.D.N.Y. Sept. 23, 2023)). As noted above, "the factors 'serve as guideposts to the Court's informed exercise of discretion.'" *Kumaran*, 2023 WL 6890839, at *2 (quoting *1724982 Alberta ULC*, 2021 WL 3115125, at *2). Courts evaluate convenience and fairness on a case-by-case basis and are afforded broad discretion in doing so. *See D.H. Blair & Co., Inc.*, 462 F.3d at 106.

Here, a balanced review of the relevant nine equitable factors supports transfer of this case to the U.S. District Court for the District of Nevada. The convenience of witnesses—arguably the most significant of whom are Nevada residents Shen and Koehler, *see* Dkt. No. 1 ¶¶ 3-4—clearly favors transfer. The factor regarding convenience of the parties is negligible, given the geographic diversity of the parties, although Nevada is more convenient for Shen and Koehler. *Id.* ¶¶ 1-4. The locus of operative facts is similarly ambiguous, though it is noteworthy that Plaintiff's funds are alleged to have been transferred to the Western business checking account in Nevada, and subsequently disbursed to at least Shen's bank account and wrongfully held in the state. *See id.* ¶¶ 21, 28-29; Dkt. No. 38-1 at 5-12. The availability of process to compel the attendance of unwilling witnesses also favors transfer to the U.S. District Court for the District of Nevada, the likely location of such witnesses who will then be within that court's subpoena power. *See* Fed. R. Civ. P. 45 (c)(1)(A). And it is beyond doubt that the U.S. District Court for the District of Nevada will be familiar with the governing law of this case in which claims for fraud, breach of

33

contract, conversion, and unjust enrichment have been brought, *see generally* Dkt. No. 1, which favors transfer. Moreover, the weight accorded the Plaintiff's choice of forum also poses no obstacle to transfer to the U.S. District Court for the District of Nevada, as Plaintiff consents to the same in lieu of dismissal of the Complaint as against Koehler. *See* Dkt. No. 42 at 3-5.

The ninth equitable factor—judicial economy and the interests of justice—weighs most heavily in favor of transfer. *See Brown v. New York*, 947 F. Supp. 2d 317, 326 (E.D.N.Y. 2013) (transferring case where "judicial economy and the interests of justice weigh heavily in favor of transfer."). Indeed, courts frequently transfer actions in lieu of entering a dismissal that may create statute of limitations issues. *See Domond v. Great Am. Recreation, Inc.*, 116 F. Supp. 2d 368, 375 (E.D.N.Y. 2000) ("A majority of courts have held that transferring an action is more appropriate than dismissal when such action will likely cause future statute of limitations problems.") (citing *Corke*, 572 F.2d at 80). Given the fact that Plaintiff's claims likely accrued in or about the first quarter of 2021, *see generally* Dkt. No. 1, dismissal of Plaintiff's complaint would result in statute of limitations issues if Plaintiff refiled in the proper venue of the U.S. District Court for the District of Nevada. *See* Nev. Rev. Stat. § 11.190(1)(b) (six-year limitations period for breach of written contract); Nev. Rev. Stat. § 11.190(3)(d) (three-year limitations period for fraud); Nev. Rev. Stat. § 11.190(2)(c) (four-year limitations period for unjust enrichment, *see also In re Amerco Derivative Litigation*, 252 P.3d 681, 703 (Nev. 2011)); Nev. Rev. Stat. § 11.190(3)(c) (three-year limitations period for conversion, *see also Reno Tech. Ctr. 1, LLC. v. New Cingular Wireless PCS LLC*, No. 17-CV-00410 (LRH) (WGC), 2019 WL 507461, at *7 (D. Nev. Feb. 7, 2019)). Plaintiff timely filed this action in this Court on June 2, 2021, *see* Dkt. No. 1, and the Court has no reason to question Plaintiff's presumptive diligence and good faith in selecting this forum—particularly as multiple defendants have still never appeared in this action.

The undersigned also notes that this transfer is being recommended on a *sua sponte* basis, which is within the sound discretion of this Court. *See RBG Mgmt. Corp.*, 2024 WL 50239, at *1; *Delacruz*, 2021 WL 5871424, at *2. That said, Plaintiff did raise the issue of transfer in its objection to the Report and Recommendation, *see* Dkt. No. 42 at 3-5, an argument which Koehler asserts Plaintiff had waived and constitutes relief Plaintiff is otherwise not entitled to, *see* Dkt. No. 43 at 2-3. There has been disagreement in the Second Circuit whether a plaintiff seeking to transfer venue must demonstrate a change in circumstances since filing the suit. *See Jibowu*, 2024 WL 4753294, at *4 (listing cases). But, as in *Jibowu*, "[t]he Court agrees with those courts that have found no need for a showing of changed circumstances where the transfer is in the interest of justice." *Id.*; *see also Nat'l Experiential, LLC v. Nike, Inc.*, No. 20-CV-03197 (ENV) (SIL), 2021 WL 9678642, at *4 (E.D.N.Y. July 31, 2021) ("With the Second Circuit yet to explicitly address the need for a change of circumstances requirement, the weight of authority favors the view that even though a bona fide change in circumstances may be a sure sign that transfer of venue would be in the interests of justice, it does not augment or displace that essential inquiry.").

The undersigned therefore respectfully recommends transfer of this case to the U.S. District Court for the District of Nevada, where both venue and personal jurisdiction are proper, and transfer thereto is in the interests of justice. *See* 28 U.S.C. §§ 1332 and 1391.

## V.  <u>Conclusion</u>

Accordingly, the undersigned respectfully recommends that Koehler's Motion be granted, to wit: that the Default Judgment be vacated as to Koehler for lack of personal jurisdiction under Fed. R. Civ. P. 60(b)(4); that the Court order the return of the funds collected from Koehler's bank account pursuant to the Default Judgment; and that the Court order Plaintiff to cease and desist all enforcement efforts attendant to the Default Judgment against Koehler. The undersigned

respectfully does not recommend that that the Default Judgment be vacated against APKZ, Western, or Shen.   The undersigned also respectfully recommends that this entire case be transferred to the U.S. District Court for the District of Nevada.

A copy of this Report and Recommendation is being electronically served on counsel.  This Court directs Plaintiff's counsel to serve a copy of this Report and Recommendation by overnight mail and first-class mail on Defendants APKZ, Western, and Shen and file proof the same by September 5, 2025.

Copies shall be served at the following addresses (*see* Dkt. Nos. 1 ¶¶ 2-4; 23):

APKZ MEDICAL INC.
8350 NW 52 Terrace
Doral, Florida 33166

WESTERN MED SUPPLIES LLC
520 S. 4th Street, Fl. 2
Las Vegas, Nevada 89101

CHEK SHIN SHEN a/k/a JESSE SHEN
6979 Stober Court
Las Vegas, Nevada 89147

Any objections to this Report and Recommendation must be filed within 14 days after service of this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). *See also* Fed. R. Civ. P. 6(a) & (d) (addressing computation of days).  Any requests for an extension of time for filing objections must be directed to Judge Kuntz.  Failure to file objections within this period designating the particular issues to be reviewed waives the right to appeal the district court's order.  *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Kotlyarsky v. United States Dep't of Just.*, No. 22-2750, 2023 WL 7648618 (2d Cir. Nov. 15, 2023); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:      Brooklyn, New York         **SO ORDERED.**
            September 3, 2025

                                                *  /s/ Joseph A. Marutollo  *
                                                JOSEPH A. MARUTOLLO
                                                United States Magistrate Judge